

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

---

SLT    *271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 13, 2009

The Honorable Charles P. Sifton
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Boris Nayfeld
     Criminal Docket No. 08-0044 (S-1)(CPS)

Dear Judge Sifton:

The government respectfully submits this sentencing memorandum in response to the defendant Boris Nayfeld's letter filed on Friday, July 10, 2009.  As set forth in the amended Presentence Investigation Report ("PSR"), the applicable Sentencing Guidelines range is 51 to 63 months, which is based on a total offense level of 23 and a criminal history category of II.  Nayfeld does not challenge the Guidelines calculation set forth in the PSR, but seeks a sentence below the Guidelines range based primarily on Nayfeld's limited role in the conspiracy and the amount of personal profits he received as distinct from the total amount of money laundered during his participation in the charged conspiracy.  Considering all of the factors enumerated in 18 U.S.C. § 3553(a), a sentence within the Guidelines is both reasonable and necessary in this case.

A.   Loss Calculation

As an initial matter, the government does not agree with the PSR that the Supreme Court's decision in United States v. Santos, 128 S. Ct. 2020 (June 2, 2008), applies in this case.  Since Santos was a plurality decision with no majority holding, it has no precedental value outside of its specific factual context.  Specifically, Santos holds only that in money laundering cases where the underlying specified unlawful activity is the operation of an illegal gambling establishment, the laundered funds includes "profits" of the illegal venture, not "gross proceeds."  Indeed, a majority of the Justices in Santos found that where the specified unlawful activity involves obvious contraband, such as narcotics or (as here) contraband cigarettes,

the money laundering statute contemplates that the laundered funds would include all gross proceeds of the unlawful activity. See, e.g., United States v. Fleming, 287 Fed. Appx. 150, 2008 WL 3824752 (3rd Cir. Aug. 15, 2008) (Justice Stevens' concurrence in Santos makes clear that the profits test does not apply in drug cases; thus, these cases include all gross proceeds in the definition of laundered funds).

Nevertheless, because the government agrees with the loss amount set forth in the amended PSR – just under $1 million – there is no need to resolve this legal dispute.

B.   Nayfeld's Role in the Offense

Nayfeld contends that a non-Guidelines sentence is warranted because he was less culpable than other members of the conspiracy. He argues that he participated in the conspiracy for less than a year and that his personal profits from the illegal venture were only $42,000. These arguments have no merit.

Nayfeld was part of an extensive and far-reaching criminal conspiracy. Pursuant to U.S.S.G. § 1B1.3(a)(1)(B), Nayfeld is liable as a co-conspirator for "all reasonably foreseeable acts and omissions" in furtherance of the conspiracy. Nayfeld personally participated in numerous transactions, including, among other activities: financing the purchase of illegal counterfeit cigarettes, collecting the profits from the illegal activities, and secreting hundreds of thousands of dollars in cash that he smuggled across international borders so that it could be deposited in the Ukraine and laundered by other members of the conspiracy through a dizzying array of offshore bank accounts and shell companies. In addition to co-defendants Ricardo Fanchini, Nikolai Dozortsev and Arthur Dozortsev, the conspiracy included more than a dozen additional members in Belgium, Romania and the Ukraine. The profits from their illegal venture was obviously shared by all of the co-conspirators. Thus, Nayfeld's personal profits from his illegal activity are immaterial. The PSR properly holds him accountable for all of the money laundered by Nayfeld and his co-conspirators during the time period that Nayfeld was a member of the conspiracy. See, e.g., United States v. Zichettello, 208 F.3d 72, 101 (2d Cir. 2000) (because defendant was aware of the larger scheme, the district court did not err in finding him liable for the entire loss suffered as part of the conspiracy).

To the extent that Nayfeld is less culpable than other members of the conspiracy, that too fails to support a non-

Guidelines sentence because it is adequately reflected in the Guidelines calculation.  For example, Nayfeld did not receive an enhancement for leadership or supervisory role, unlike other members of the conspiracy who played a larger role in the conspiracy.  Moreover, Nayfeld was only held responsible for the money that was laundered during his participation in the conspiracy.  Other members of the conspiracy who were involved in more illegal transactions over a longer period of time have been held responsible for the greater amount of money laundered during their own involvement.  Indeed, the leader of the conspiracy was assessed a four-level leadership role and held accountable for laundered funds in excess of $30 million.

In sum, Nayfeld's role in the conspiracy does not warrant a sentence below the Guidelines.

C.  Nayfeld's History and Characteristics

In fashioning a reasonable sentence under § 3553(a), the Court should also consider the defendant's history and characteristics.  This is not Nayfeld's first criminal offense.  Indeed, he was previously convicted for running a large international heroin importation and distribution ring, for which he received a reduced sentence of less than five years.  PSR at ¶¶ 70-72.  Despite the benefit of this lesser sentence, Nayfeld once again became involved in large-scale international criminal activity.  Accordingly, the chance of recidivism is demonstrably high.

### Conclusion

For all of these reasons, the Court should sentence the defendant within the Guidelines range set forth in the Amended PSR.

Very truly yours,

BENTON J. CAMPBELL
United States Attorney

By:  _____
Steven Tiscione
Assistant U. S. Attorney
(718) 254-6317

cc: Frank Tassone, Esq.